# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

**WARREN C. FLOWERS**                                          **PLAINTIFF**

v.                                     **CIVIL ACTION NO. 2:17-CV-118-KS-MTP**

**JEFF SESSIONS, ATTORNEY GENERAL**                      **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

For the reasons below, the Court **grants** Defendant's Motion for Partial Summary Judgment [56]. Plaintiff's claims of racial discrimination and hostile work environment are dismissed with prejudice.

## I. BACKGROUND

This is a Title VII case. Plaintiff was an FBI Special Agent in Hattiesburg, Mississippi. He alleges that his training agent, Special Agent David Ronscka, and his supervisor, Supervisory Senior Resident Agent Rachel Byrd, discriminated against him on the basis of his race. He asserted claims of discrimination, hostile work environment, and retaliation. Defendant filed a Motion for Summary Judgment [56] as to the claims of discrimination and hostile work environment.

## II. STANDARD OF REVIEW

Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010). "Where

the burden of production at trial ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (punctuation omitted). The nonmovant "must come forward with specific facts showing that there is a genuine issue for trial." *Id.* "An issue is material if its resolution could affect the outcome of the action." *Sierra Club*, 627 F.3d at 138. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Cuadra*, 626 F.3d at 812.

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009). When deciding whether a genuine fact issue exists, "the court must view the facts and the inference to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club*, 627 F.3d at 138. However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002).

### III. DISCUSSION

*A.     Discrimination*

Title VII prohibits employment discrimination because of race. 42 U.S.C. § 2000e-2(a)(1). On summary judgment, Title VII claims are analyzed under the *McDonnell Douglas* burden-shifting analysis. *Thomas v. Tregre*, 913 F.3d 458, 462

2

(5th Cir. 2019). First, the "Title VII plaintiff bears the burden of establishing a prima facie case of racial discrimination, after which the burden shifts to the employer to show some legitimate, nondiscriminatory reason for the challenged actions." *Id.* "If the employer meets its burden of production, the plaintiff then bears the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext for the real discriminatory . . . purpose." *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007).

Defendant argues that Plaintiff has insufficient evidence to make out a prima facie case of discrimination. To establish a prima facie case of discrimination, Plaintiff must prove that he "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group." *Thomas*, 913 F.3d at 462.

Defendant contends that Plaintiff can not prove that he suffered an adverse employment action. Under Title VII, "[a]dverse employment actions are 'ultimate employment decisions' such as hiring, firing, demoting, promoting, granting leave, and compensating." *Stroy v. Gibson*, 896 F.3d 693, 699 (5th Cir. 2018) (quoting *Thompson v. City of Waco*, 764 F.3d 500, 503 (5th Cir. 2014)). "[A]n employment action that does not affect job duties, compensation, or benefits is not an adverse employment action." *Id.*

3

Plaintiff claims that he suffered at least four adverse employment actions: a temporary reassignment to Gulfport, removal from the lead agent role on active cases, a transfer to Jackson, and termination. Plaintiff has not directed the Court to any evidence in the record to support his allegations that Defendant temporarily reassigned him to Gulfport, removed him from the lead agent role on active cases, or transferred him to Jackson. "Arguments in briefs, like allegations in a complaint, are assertions, not evidence." *Collins v. Jackson Pub. Sch. Dist.*, 609 F. App'x 792, 795 (5th Cir. 2015); *see also Dean v. Phatak*, 911 F.3d 286, 290 (5th Cir. 2018); *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). The Court is not obligated to search the record for evidence to support Plaintiff's claims. *Willis v. Cleo Corp.*, 749 F.3d 314, 317 (5th Cir. 2014). Without evidentiary support, these bare allegations do not meet Plaintiff's summary judgment burden.

Defendant does not deny that it terminated Plaintiff's employment. However, Defendant argues that Plaintiff failed to exhaust his administrative remedies with respect to any discrimination claim arising from his termination. "Before seeking relief in federal court, Title VII plaintiffs must exhaust their administrative remedies." *Stroy*, 896 F.3d at 698; *see also* 42 U.S.C. § 2000e-16(c). They do so "by filing a charge of discrimination with the EEO division of their agency." *Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir. 2006). "Administrative exhaustion has not been satisfied until either: (1) the employee receives notice of final agency action or by the EEOC upon appeal from an agency decision, or (2) 180 days have passed from the

filing of the administrative complaint or appeal thereof without final agency decision." *Stroy*, 896 F.3d at 698. To determine which claims are "properly embraced in review of a Title VII claim," the Court considers "the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Pacheco*, 448 F.3d at 789. The Court must "engage in fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and look slightly beyond its four corners, to its substance rather than its label." *Id.*

Plaintiff did not provide or direct the Court to a copy of his EEO charge. Plaintiff alleges that he updated his EEO complaint via e-mail to include his termination, but he provided no evidence to support the allegation. As noted above, allegations in briefing are not evidence, *Collins*, 609 F. App'x at 795, and the Court is not obligated to search the record for evidence to support Plaintiff's claims. *Willis*, 749 F.3d at 317. Without evidentiary support, Plaintiff's bare allegation of exhaustion is not enough to survive a motion for summary judgment.

### B. *Hostile Work Environment*

Next, Defendant argues that Plaintiff does not have evidence to support a prima facie case of hostile work environment. To establish a hostile work environment, Plaintiff must prove that he:

> (1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.

5

*Williams-Boldware v. Denton County, Tex.*, 741 F.3d 635, 640 (5th Cir. 2014) (quoting *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012)). "A workplace environment is hostile when it is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently pervasive to alter the conditions of the victim's employment." *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 443 (5th Cir. 2012). "In assessing whether a claim meets that standard, courts review all of the relevant circumstances, including the frequency of the conduct, its severity, whether it is physically threatening or humiliating or it is a mere offensive utterance, and whether it unreasonably interferes with the employee's work performance." *Id.*

Defendant argues that Plaintiff has no evidence that he was harassed because of his race, and that the alleged harassment was not severe or pervasive enough to create a hostile work environment. In response, Plaintiff points to a few incidents that he believes support his claim.

First, Plaintiff cites a comment made by his training agent, Ronscka. According to Plaintiff's deposition testimony, the agents were discussing a "law enforcement cookout thing they do every year . . . in Hattiesburg." Exhibit G to Response, *Flowers v. Sessions*, No. 2:17-CV-118-KS-MTP (S.D. Miss. Dec. 14, 2018), ECF No. 61-7. Ronscka said: "Well, you know there's been conversations they're sponsored by the KKK. . . . But that doesn't mean that everybody that goes to that is part of the KKK." *Id.* Ronscka then asked another agent, "[D]o you attend those barbecues, cookouts, the law enforcement cookout?" *Id.* The agent replied, "Yes, I do," and Ronscka

allegedly looked at Plaintiff "and smiled." *Id.* Ronscka asked the agent again, "Do you attend the law enforcement cookout here in Hattiesburg," and the agent said, "Yes, I do." *Id.* Ronscka asked again, "Well, are you a member of the KKK?" Plaintiff testified: "[Ronscka] looked again and smiled at me, and other guys started snickering . . . ." *Id.*

"Incidental or occasional [race]-based comments, discourtesy, rudeness, or isolated incidents (unless extremely serious) are not discriminatory changes in the terms and conditions of a worker's employment." *Reed*, 701 F.3d at 443; *see also Patton v. Jacobs Eng'g Grp., Inc.*, 874 F.3d 437, 445 (5th Cir. 2017) (simple teasing and offhand comments do not alter the terms and conditions of employment). A "mere offensive utterance" or joke is not, by itself, enough to support a claim for hostile work environment. *Long v. Eastfield College*, 88 F.3d 300, 309 (5th Cir. 1996). At best, Ronscka's comment was an isolated offensive utterance and not enough to alter the terms and conditions of Plaintiff's employment.

Next, Plaintiff alleges that a supervisor described him as a "problem child," and that the phrase "'problem child' evokes a similar meaning as the use of 'boy,'" which has "historically been used as a disparaging term for African American men." Response at 11, *Flowers v. Sessions*, No. 2:17-CV-118-KS-MTP (S.D. Miss. Dec. 14, 2018), ECF No. 61. The phrase "problem child" has absolutely nothing to do with race. Plaintiff's argument to the contrary is disingenuous and ridiculous. Moreover, Plaintiff has not directed the Court to any deposition testimony on this point, and, as

7

noted above, allegations are not evidence. *Collins*, 609 F. App'x at 795.

Plaintiff also argues that someone drew a racist caricature of him on a dry-erase board in the office. He testified: "[S]omeone drew a picture of a person with muscles. . . . [N]obody told me, oh, that's you, but it was obviously me. . . . It was drawn like one of the old time characters." Exhibit C to Response at 2, *Flowers v. Sessions*, No. 2:17-CV-118-KS-MTP (S.D. Miss. Dec. 14, 2018), ECF No. 61-3. Plaintiff testified that the figure had big lips, big ears, and black curly hair. *Id.* at 6-7. Plaintiff assumed that the drawing was supposed to be him, but he has no evidence as to who drew it, why they drew it, or what their intent was. *Id.* at 7. The drawing was gone within a day, presumably because someone erased it. *Id.* at 4. The record contains no evidence as to what the drawing looked like beyond Plaintiff's vague recollection. Plaintiff attempted to reproduce it during his deposition, *id.* at 1, but he admitted that his version of the drawing was not accurate. *Id.* at 2.

Plaintiff's testimony as to this alleged drawing is not sufficient to prove that he was harassed because of his race. First, beyond Plaintiff's vague verbal description, the Court has no idea what the drawing looked like and can not assess whether a reasonable person would interpret it as racially motivated. The mere fact that Plaintiff was offended is not sufficient to prove that the mystery artist was motivated by race. Likewise, the record contains no evidence as to who drew the picture or why they drew it. Plaintiff assumed, without any supporting evidence, that the drawing was intended to be a racially offensive caricature of him. That is not

8

sufficient to prove harassment on the basis of race.

Next, Plaintiff claims that he was accused of stealing tires off government vehicles after he had been fired, but Plaintiff presented no evidence that the accusation was motivated because of his race. Exhibit D to Response at 1-2, *Flowers v. Sessions*, No. 2:17-CV-118-KS-MTP (S.D. Miss. Dec. 14, 2018), ECF No. 61-4. Plaintiff assumed – without providing any evidence – that his supervisor was trying to accuse him of being a drug addict because "usually from [his] experience as a police officer, drug abusers steal wheels off of cars." *Id.* at 2. He assumed that the accusation was because of his race because he believes that people generally "try to put it out there as black people only do that." *Id.* But, again, Plaintiff presented no evidence that the accusation of theft had anything to do with his race, only speculation and conjecture.

Finally, Plaintiff generally alleges that he was excluded from his squad's operations. He claims that his squad-mates refused to assist him in investigations, and that they once intentionally left him waiting under a bridge for forty-five minutes during an operation. He believes that he was targeted because he was the only African-American on the squad. Plaintiff's allegations of exclusion from squad operations are so vague that they're meaningless. During his deposition, Plaintiff asserted, without citing anything but his own belief, that the other task force officers "excluded [him] from everything purposely." Exhibit F to Response at 4, *Flowers v. Sessions*, No. 2:17-CV-118-KS-MTP (S.D. Miss. Dec. 14, 2018), ECF No. 61-6. The

9

closest he got to testifying about a specific incident was his claim that, on one occasion, his squad-mates left him sitting under a bridge waiting for instructions for forty-five minutes. *See* Exhibit 2 to Reply at 4-6, *Flowers v. Sessions*, No. 2:17-CV-118-KS-MTP (S.D. Miss. Dec. 21, 2018), ECF No. 62-2. But he had no evidence that the incident was motivated by his race, *id.*, and, regardless, it was not severe enough to alter the terms and conditions of his employment.

The Court concludes that Plaintiff has not presented sufficient evidence to create a genuine dispute of fact as to whether he was harassed because of his race. Moreover, the minor incidents of which he complains are not severe enough to alter the terms and conditions of his employment. Accordingly, his hostile work environment claim fails.

### **IV. C**ONCLUSION

For these reasons, the Court **grants** Defendant's Motion for Partial Summary Judgment [56]. Plaintiff's claims of racial discrimination and hostile work environment are dismissed with prejudice.

SO ORDERED AND ADJUDGED this 18th day of March, 2019.

/s/ Keith Starrett<br>
KEITH STARRETT<br>
UNITED STATES DISTRICT JUDGE